UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Civil Division

|  |  |
|---|---|
| **CHINYERE OGHIDE,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| **DENIS MCDONOUGH, SECRETARY,** ) | |
| **DEPARTMENT OF VETERANS AFFAIRS,** ) | |
| 810 Vermont Ave., NW ) | |
| Washington, D.C. 20420, ) | |
| ) | |
| *Defendant* ) | |
| *Serve*: ) | Civil Action No.: _____ |
| ) | |
| **DENIS MCDONOUGH, SECRETARY,** ) | |
| **DEPARTMENT OF VETERANS AFFAIRS,** ) | |
| 810 Vermont Ave., NW ) | |
| Washington, D.C. 20420, ) | |
| *-Via Certified Mail* ) | |
| ) | |
| **U.S. ATTORNEY'S OFFICE FOR THE** ) | **JURY TRIAL DEMANDED** |
| **SOUTHERN DISTRICT OF NEW YORK,** ) | |
| Attn:  Civil Process Clerk ) | |
| U.S. Attorney's Office ) | |
| One St. Andrew's Plaza ) | |
| New York, N.Y. 10007, ) | |
| *-Via Certified Mail* ) | |
| ) | |
| **U.S. ATTORNEY GENERAL,** ) | |
| 950 Pennsylvania Avenue, NW ) | |
| Washington, DC 20530-0001, ) | |
| *-Via Certified Mail* ) | |
| ) | |

**COMPLAINT FOR EQUITABLE AND
<u>MONETARY RELIEF AND DEMAND FOR JURY TRIAL</u>**

Plaintiff Chinyere Oghide, by and through her attorneys, brings this action against

Defendant Department of Veterans Affairs ("VA" or "Agency") for discriminating against her

and subjecting her to a hostile work environment based on her race (Black), national origin (Nigeria), sex (female), and prior protected EEO activity, and for retaliating against her based on prior protected EEO activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically Title VII.

2. This Court has personal jurisdiction over the VA because it conducts significant business in this judicial district.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because all or a substantial portion of the unlawful employment practices occurred within this judicial district.

## PARTIES

4. Plaintiff Chinyere Oghide is a United States citizen and is domiciled in Wappingers Falls, New York.

5. Defendant is headquartered in Washington, District of Columbia and conducts significant business in this district at 41 Castle Point Road, Wappingers Falls, N.Y. 12590.

## ADMINISTRATIVE EXHAUSTION

6. Oghide has complied with all the administrative prerequisites necessary to bring this action.

7. On or about March 16, 2022, Oghide initially contacted the Agency Equal Employment Opportunity office ("EEO") to file a complaint of discrimination.

8. On or about April 15, 2022, the Agency EEO office issued Oghide a notice of

right to file a discrimination complaint.

9. On or about April 29, 2022, Oghide filed her formal complaint of discrimination.

10. On or about November 21, 2022, the Agency issued Oghide a notice of rights.

11. On or about December 7, 2022, Oghide requested an EEOC hearing based on her formal complaint.

12. On or about July 20, 2023, Oghide withdrew her claims in the EEOC and requested a final agency decision ("FAD").

13. On or about July 20, 2023, Administrative Judge Neile F. Eisner issued an Order of Dismissal pursuant to 29 C.F.R. § 1614.109, requiring the Agency to issue a FAD within 60 days of the order.

14. The Agency has to date failed to issue a FAD.

15. On or about April 20, 2023, Oghide made contact with the Agency's EEO office, reporting additional instances of discrimination, retaliation, and hostile work environment.

16. On or about May 26, 2023, the Agency EEO office issued Oghide a notice of right to file a formal complaint.

17. On or about June 9, 2023, Oghide filed a second formal EEO complaint against the Agency.

18. On or about October 17, 2023, Oghide received the Agency's dismissal of her second EEO complaint which outlined her appeal rights, including the right to file her complaint in federal district court within 90 days of receipt.

## FACTUAL ALLEGATIONS

19. Oghide is a female, originally from Nigeria, and speaks English with an accent.

20. Oghide became a nurse practitioner in 2003, and on or about January 3, 2012, the

VA hired Oghide at its Hudson Valley, New York location.

21. The Hudson Valley VA ("HVA") is comprised of two facilities: the Franklin Delano Roosevelt Hospital in Montrose, New York; and the Castle Point Medical Center in Wappingers Falls, New York. These facilities both serve the same functions and are governed by the same administration.

22. Oghide began working at the HVA in the nursing home section called the community living center at the Castle Point facility.

23. In or around August of 2015, the VA moved Oghide to the Montrose compensation and pension ("C&P") department, where she reviewed veterans' medical records to determine if they should receive compensation for a medical condition.

24. Dr. Felix Kunjukutty became Oghide's first-line supervisor at this time.

25. In or around August of 2015, the VA reassigned Oghide to work at the Castle Point Urgent Care two days a week and the Montrose C&P facility three days a week.

26. Dr. Kunjukutty routinely denied Oghide's requests for leave, even though he granted requests from most other male HVA employees. Dr. Kunjukutty also refused to grant leave to Dr. Anna Plichta, a female doctor who also spoke with an accent.

27. Oghide's assignment at the Montrose facility ended in or around February of 2016. At the end of her assignment, Dr. Kunjukutty asked Oghide whether she preferred to be working at the Montrose facility or in Urgent Care at Castle Point.

28. Oghide informed Dr. Kunjukutty that she preferred working at the Castle Point Urgent Care over C&P because she was able to be more hands-on with patients there, but Dr. Kunjukutty was upset and offended by her response.

29. Dr. Robert Siegel, acting chief of staff and a pulmonologist at the Bronx VA ICU,

created the nurse practitioner clinic at the urgent care clinic at Castle Point at around the same time. Dr. Siegel offered Oghide a position in the nurse practitioner clinic because of her successful performance at the community living center and based on recommendations from other clinical physicians who worked with Oghide and spoke highly of her performance and abilities.

30. Dr. Kunjukutty became the chief of staff in or about 2019, and he hindered Oghide taking the position in the nurse practitioner clinic. Along with deputy chief of staff Dr. Timothy Hall, he tried to persuade Oghide to return to C&P, accept a new position in the occupational health department at Montrose, or accept the position of Hospitalist at the Montrose VA campus. Oghide told Dr. Kunjukutty in response that she was not interested in these positions and these she wanted to work in the urgent care clinic at Castle Point.

31. The Agency rated Oghide as "outstanding" in her 2019-2020 proficiency report.

32. In or around September of 2020, Dr. Kunjukutty merged the nurse practitioner urgent care with the emergency department at Castle Point, effectively dissolving the nurse practitioner urgent care clinic.

33. Dr. Regina Sexton, who ran the emergency department at Castle Point, became Oghide's new first-line supervisor following this merger.

34. Dr. Kunjukutty began requiring Oghide to submit her medical notes on patients to him for review and co-sign around the time of the merger. Oghide questioned this requirement because it was uncommon for doctors to review the notes of nurse practitioners, but Dr. Kunjukutty persisted.

35. On or about October 8, 2020, Dr. Sexton went on vacation, leaving Oghide short-staffed in the emergency department.

36. On or about October 9, 2020, four patients came to the emergency department at once, all displaying moderate to severe symptoms. Nursing manager Joe Martir contacted the administration during this period of high traffic and requested a provider's help for at least one of these patients.

37. Dr. Kunjukutty advised Martir to give the patient hypotension fluids without checking one of the patients' charts. Oghide observed upon reviewing the patients' charts that the patient had end stage congestive heart failure and deduced that Dr. Kunjukutty's prescription for fluids would have likely killed this patient if it had been administered.

38. Oghide also transferred one of the patients to a local community hospital because she was unable to order an endoscopy from HVA.

39. Dr. Kunjukutty criticized Oghide's handling of the four patients, focusing on the fact that she asked for help and did not handle these patients on her own.

40. On or about October 21, 2020, Oghide was caring for a patient with chest pain and ordered the nurse, Adelle Decker-Pavlik, to get an EKG for the patient. Upon learning that Decker-Pavlik didn't complete the EKG because she didn't deem it necessary, Oghide ordered her to complete the EKG again.

41. Dr. Sexton placed Oghide on a 90-day Focused Professional Practice Evaluation ("FPPE") following the EKG incident, per Dr. Kunjukutty's instruction. Oghide filed an EEO charge of discrimination after this incident.

42. Dr. Kunjukutty also sent the EKG incident to a peer review committee, over which he presided, following the creation of this FPPE, and the committee initially returned a level two rating, which indicated that Oghide's behavior, although not perfect, was acceptable. However, the committee changed the rating from a two to a three, indicating that other

practitioners would have done better than Oghide, after receiving Dr. Kunjukutty's comments.

43. Oghide requested that the incident be sent out for external review, and the external reviewers returned a level one rating, indicating Oghide did everything correctly.

44. In or around November of 2020, Oghide attended an EEO mediation for her EEO complaint arising out of the October 2020 FPPE. The Agency and Oghide reached a settlement agreement in which the Agency agreed that the FPPE would be reduced to a 30-day period that would end on December 13, 2020, and that Oghide would be reassigned to a different department.

45. In or around November of 2020, the Agency's administration asked Dr. Supriyo Das, a male physician, to help the urgent care center, but Dr. Das refused, claiming he wasn't comfortable working in urgent care.

46. Dr. Kunjukutty raised no concerns with Dr. Das's excuses, yet he forced Oghide to work without lunch breaks and longer hours to cover the urgent care center alone.

47. The Agency did not reassign Oghide to a new department even though it was part of the settlement agreement. Instead of a proper reassignment, Dr. Kunjukutty detailed Oghide to the COVID-19 testing unit at the Montrose facility. Typically, practitioners would volunteer to be placed in a COVID-19 testing unit, yet Dr. Kunjukutty placed Oghide in the unit without her expressing any interest.

48. Dr. Rakhee Saxena became Oghide's new supervisor in the COVID-19 detail.

49. When Oghide was detailed to the COVID-19 unit, she contacted Sheryle Harris, the VA Scholarship coordinator to ensure that the detail did not impact her participation in the VA National Nursing Education Initiative (NNEI) Scholarship program, which allowed Oghide to return to school to receive a doctor of nursing practice degree paid for by the VA as long as

she worked for the VA for three years after completion of studies. Harris did not raise any concern with the detail impacting her scholarship and informed Oghide that the scholarship only required her to work in a nursing position classified as a code 0610 position.

50. On or around March 1, 2021, the Agency transferred Oghide to the Occupational Health Department, where Dr. Kunjukutty placed Oghide on another FPPE to last from on or about March 1, 2021, to on or about March 31, 2021. This FPPE was supposed to last from on or about March 1, 2021, to on or about March 31, 2021.

51. Dr. Kunjukutty also mandated that Oghide have her notes reviewed by a physician assistant named Sidney Wallin. Wallin has less experience than Oghide, has never been a nurse practitioner, and is a Caucasian female.

52. Wallin and Dr. Kunjukutty continuously used Oghide's patient notes as justification to extend her FPPE.

53. After Oghide initially questioned the extensions of her FPPE and why her notes needed to be co-signed by Wallin to Dr. Kunjukutty, she eventually stopped out of fear that Dr. Kunjukutty would ask her to resign because Dr. Kunjukutty would threaten her by saying comments like, "If you do not complete your FPPE, your privileges will be stripped, or reduced, and it is reportable, and you will lose your license."

54. Oghide's FPPE lasted from in or about March of 2021 until in or about February of 2022.

55. Oghide submitted approximately 30 job applications to VA facilities across the country in the hope of relocating away from Dr. Kunjukutty while her FPPE was continuously extended. Oghide had 10 job interviews for these positions; however, the Agency denied every single one of these positions because of her FPPE.

56. One of these positions was for a nurse practitioner in the community living center. When Oghide expressed interest in this position, Dr. Kunjukutty told her receiving the job would not be a problem. However, although Agency practice is usually to hire from within, Oghide subsequently found the job posted for non-Agency applicants on USAJobs.gov. Oghide still applied for the job through USAJobs.gov and secured an interview.

57. Dr. Kunjukutty, as Chief of Staff, was involved in the interview process for this position, and on or around February 21, 2022, the Agency denied Oghide the position. Dr. Kunjukutty also interfered with several of Oghide's applications by changing roles or reassigning other employees.

58. On or around February 22, 2022, Oghide met with Dr. Kunjukutty and Dr. Saxena and questioned the extensions of her FPPE, the denial of her positions, and other unfair treatment by Dr. Kunjukutty.

59. Oghide asked Dr. Kunjukutty why he subjected her to discrimination, hostility, and frequent threats and told him that this caused her psychological distress, loss of pride, and feelings of insecurity, and Dr. Kunjukutty responded by telling Oghide to file an EEO complaint against him.

60. In or around March of 2022, Oghide accepted a resident nurse position, a demotion from a nurse practitioner position, to escape the hostile work environment. The resident nurse position is a 0610 nursing position.

61. Dr. Kunjukutty initially refused to release Oghide from his department but reluctantly gave her a release date when Dr. Saxena asked him to do so.

62. Oghide filed another EEO complaint in or around March of 2022 when she was not selected for the nurse practitioner position in the community living center.

63. On or around March 6, 2023, the Agency sent Oghide a letter of indebtedness, stating she was in breach of her scholarship agreement and owed the VA nearly $40,000.

64. Oghide's resident nurse position is a 0610 nursing position, as required by her scholarship agreement.

65. Oghide has suffered mental anguish and economic damages as the result of Defendant's illegal actions, and she will continue to sustain damages into the future.

## COUNT I
### Discrimination Based on Race, Sex, and National Origin
### Title VII, 42 U.S.C. § 2000e *et seq.*

66. Oghide hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

67. The Agency is an "employer" as defined in 42 U.S.C. § 2000e.

68. Oghide is an "employee" as defined in 42 U.S.C. § 2000e.

69. Oghide is an African American woman from Nigeria.

70. The Agency discriminated against Plaintiff on the basis of her race, sex, and national origin when it placed her on an FFPE and extended the FPPE several times, constructively demoted her by forcing Oghide to accept a lower-grade position as a registered nurse, and issued her a letter of indebtedness.

71. The Agency's reasons for these adverse actions are pretext for unlawful discrimination.

72. Oghide has exhausted her administrative remedies under Title VII.

73. For the VA's unlawful discrimination against Oghide, pursuant to Title VII, Oghide is entitled to general and special damages, economic damages including front and back pay, promotion, compensatory damages, reasonable attorneys' fees to be paid by the VA, as well

as her costs and any other legal and/or equitable relief that this Court deems appropriate.

## COUNT II
### Retaliation
### Title VII, 42 U.S.C. § 2000e *et seq.*

74.     Oghide hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

75.     Oghide reported discrimination and hostile work environment based on race, sex, national origin, and prior EEO activity when she contacted the Agency's EEO office in March of 2022 and April of 2023, and when she reported discrimination and hostile work environment to Dr. Kunjukutty in February of 2022. Oghide's supervisors were aware of her complaints.

76.     The VA retaliated against Oghide for engaging in protected activity when it placed her on an FFPE and extended the FPPE several times, subjected her to a hostile work environment, did not select her for a nurse practitioner position in Community Care and the Community Living Center, constructively demoted her by forcing Oghide to accept a lower-grade position as a registered nurse, and issued her a letter of indebtedness.

77.     The Agency's reasons for these adverse actions are pretext for unlawful retaliation.

78.     Oghide has exhausted her administrative remedies under Title VII.

79.     For the VA's unlawful retaliation against Oghide, Oghide is entitled to general and special damages, economic damages including front and back pay, promotion, compensatory damages, reasonable attorneys' fees to be paid by the VA, as well as her costs and any other legal and/or equitable relief that this Court deems appropriate.

## COUNT III
### Hostile Work Environment Based on Race, Sex, and National Origin
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e *et seq*.

80. Oghide hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

81. Oghide is an African American woman from Nigeria.

82. Oghide reported discrimination and hostile work environment based on race, sex, national origin, and prior EEO activity when she contacted the Agency's EEO office in March of 2022 and April of 2023, and when she reported discrimination and hostile work environment to Dr. Kunjukutty in February of 2022. Oghide's supervisors were aware of her complaints.

83. The VA subjected Oghide to a hostile work environment based on race, sex, national origin, and prior EEO activity when it engaged in actions such as the following: (1) denied her leave requests, (2) denied her the nurse practitioner position in Community Care; (3) placed Oghide on an FPPE that kept getting renewed; (4) required her medical notes to be co-signed; (5) involuntarily assigned her to a COVID-19 detail; (6) placed Oghide on another FPPE when she was assigned to the C&P program; (7) threatened Oghide that her privileges could be removed and her license could be revoked if she didn't complete her FPPE; (8) forced her to work without lunch breaks and work long hours, (9) subjected Oghide to insensitive remarks by Dr. Kunjukutty regarding his discriminatory conduct against her; (10) did not select her for the nurse practitioner position in the Community Living Center in February of 2022; (11) failed to provide Oghide with a release date from her position in March of 2022; (12) constructively demoted her when Oghide accepted a lower-grade position as a registered nurse; and (13) issued her a letter of indebtedness.

84. Oghide exhausted her administrative remedies under Title VII.

85. Management personnel's treatment of Oghide was severe and pervasive.

86. For the VA's unlawful harassment against Oghide, pursuant to Title VII, Oghide is entitled to general and special damages, economic damages including front and back pay, promotion, compensatory damages, reasonable attorneys' fees to be paid by the VA, as well as her costs and any other legal and/or equitable relief that this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chinyere Oghide respectfully requests that the Court enter a judgment in her favor and award her the following relief: granting her the following relief from Defendant:

a) Economic damages for lost compensation and damages to Oghide's career including front pay and back pay;

b) Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damages;

c) Pre-judgment interest;

d) Liquidated damages;

e) Reasonable costs and experts' and attorneys' fees; and

f) Any other such relief that the Court may deem just and equitable.

## JURY DEMAND

Plaintiff requests a trial before a jury for any and all issues to be so tried.

Respectfully submitted,

*Joshua Parkhurst*

Joshua Parkhurst, Esq.
Law Offices of Joshua Parkhurst
11 Broadway, Suite 615
New York, NY 10004

(201) 577-2644 (phone)
(212) 480-8560 (facsimile)
jparkhurst@parkhurstlawfirm.com

*Pro hac vice* motion forthcoming:
Tejal Garg, Esq.
Anita Mazumdar Chambers, Esq.
The Employment Law Group, P.C.
1717 K St. NW, Ste. 1110
Washington, D.C. 20006
(202) 261–2814
(202) 261–2835 (facsimile)
tgarg@employmentlawgroup.com
achambers@employmentlawgroup.com

*Counsel for Plaintiff*